IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| *RICHARD E. VOGEL,*<br>    **Plaintiff,**<br><br>v.<br><br>*DAVID ALBERT, et al.,*<br>    **Defendant.** | **FILED UNDER SEAL**<br><br><br>CASE NO.: **15-CV-3300-MJG** |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Defendants, David Albert, Esquire, and David Albert & Associates, LLC, by their attorneys, Alvin I. Frederick, Lauren E. Marini and Eccleston and Wolf, P.C., file this Memorandum in support of their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, and in support state as follows:

### INTRODUCTION

Plaintiff Richard Vogel has filed a single-count Complaint for legal malpractice against Defendants David Albert, Esquire and David Albert & Associates, LLC. The subject matter of the Complaint arises out of Defendants' legal representation of Mr. Vogel and Innovative Therapies, Inc. ("ITI"),[1] where Mr. Vogel was the majority and sole voting shareholder of ITI through August, 2014. Compl. ¶ 1. Mr. Vogel alleges that Defendants provided erroneous legal advice relating to a split of Mr. Vogel's shares of stock in ITI. *See generally,* Compl.

In August 2014, ITI was sold to Cardinal Health 200, LLC. Compl. ¶¶ 5-6. On August 29, 2014, an Agreement and Plan of Merger ("Agreement") was executed among Cardinal Health 200, LLC, Eureka Merger Sub, Inc., Innovative Therapies, Inc., and Richard Vogel, individually and as the stockholders' representative. A copy of the Agreement and Plan of

---

[1] Mr. Vogel brings the claim on his own behalf and as an alleged assignee of ITI. Compl. ¶ 6.

Merger is attached as **Exhibit A**[2]. In conjunction with the Agreement, each of the ITI stockholders, including Mr. Vogel, executed a Release. A copy of the Release is attached as **Exhibit B**. On June 30, 2015, Cardinal Health 200, LLC and Richard Vogel, as an individual and representative for the stockholders, executed an Amendment to Agreement and Plan of Merger ("Amendment"). A copy of the Amendment to Agreement and Plan of Merger is attached as **Exhibit C**.

As discussed further herein, the claim Mr. Vogel now seeks to bring was released on August 29, 2014, upon execution of the Agreement and Release. The subsequent Amendment (**Exhibit C**) is ineffective to modify the Release, and, accordingly, the instant lawsuit is barred.

## ARGUMENT

*A. Interpretation of Release Agreements*

Under Maryland and Delaware law,[3] the general rules of contract interpretation apply to releases. *See generally Hob Tea Room v. Miller*, 89 A.2d 851 (Del. 1952); *Corp. Prop. Assocs. 6 v. Hallwood Grp. Inc.*, 817 A.2d 777 (Del. 2003); *Brethren Mut. Ins. Co. v. Buckley*, 437 Md. 332 (2014). Thus, "'the intent of the parties as to its scope and effect are controlling, and the court will attempt to ascertain their intent from the overall language of the document.'" *Corp. Prop. Assocs. 6*, 817 A.2d at 779 (quoting *Adams v. Jankouskas*, 452 A.2d 148, 156 (Del. 1982)). When parties execute a formal agreement, the presumption is that the parties intended what they said. *See Hob Tea Room*, 89 A.2d at 856 ("The clear language of a formal instrument, duly executed, may not be lightly set aside."). "If the language of the release is clear, it will be given effect." *Id.*; *see also Hashmi v. Bennett*, 7 A.3d 1059 (Md. 2010).

---

[2] The Parties have stipulated to the authenticity and genuineness of Exhibits A, B, and C.
[3] The Release provides that "This Release will be governed by and construed under the laws of the State of Delaware without regard to principles of conflicts of law." **Exhibit B** at p. 3, ¶ 10.

2

These principals apply in the context of a general release,[4] i.e., "one which is intended to cover everything—what the parties presently have in mind, as well as what they do not have in mind, but what may, nevertheless, arise." *Hob Tea Room v. Miller*, 89 A.2d 851, 856 (Del. 1952); *see also Corp. Prop. Assocs. 6 v. Hallwood Grp. Inc.*, 817 A.2d 777 (Del. 2003) ("'Such general releases are in common use. . . . Their validity is unchallenged.'") (quoting *Hob Tea Room*, 89 A.2d at 856). A general release "must be read to release even claims against parties who gave no consideration for, had no knowledge of, and were not parties to the contract." *Brethren Mut. Ins. Co. v. Buckley*, 437 Md. 332 (2014); *see also* 29 Williston on Contracts § 73:12 (4th ed.) ("When the parties to a release agree not to sue each other or anyone else for a given event, this can effect a discharge of others who have not contributed consideration for the release; this is true if the language of the release is general, releasing, for example, 'any and all other persons,' rather than specifically naming the persons released.").

*B. Claims against Defendants as Vogel's Attorney*

The Release applies to **"any and all Released claims"** against, *inter alia*, "Vogel[5] and his respective past, present, and future representatives, affiliates, subsidiaries, insurers, ***attorneys***, successors and assigns." **Exhibit B** at p. 2, Paragraph 3 (emphasis added). The Release defines "Released Claims" as those that the

> Releasor now has, has ever had or may hereafter have . . . arising contemporaneously with or prior to the Closing or on account of or

---

[4] For an example of a general release, see *Corp. Prop. Assocs. 6 v. Hallwood Grp. Inc.*, 817 A.2d 777, 779 (Del. 2003), in which the Delaware Court found that "a mutual 'release and discharge [of the parties], their Heirs, Executors, Administrators and Assigns from any further claim or demand whatsoever pertaining to the above recited agreement . . .'" acts as a general release of "all matters touching the . . . contract." *See also Hashmi v. Bennett*, 7 A.3d 1059, 1069 (Md. 2010) (finding the release language to be "globally, releasing all employees and agents" except for a doctor who was specifically named as excepted in the release).

[5] The term "Vogel" is defined in the Release to mean "Richard Vogel . . . , as an individual and as a representative for all of the Stockholders." **Exhibit 2** at p. 1.

3

> arising out of any matter, cause, or event occurring contemporaneously with or prior to the Closing, including, but not limited to, . . . (c) breach of fiduciary duty, . . . **(f) any amendment, whether effective or ineffective, to the Company's Certificate of Incorporation or Bylaws**, (g) the capitalization of the Company, (h) the Performance Unit Plan (including any amendments thereto) and the Performance Units issued thereunder . . . .

**Exhibit B** at pp. 1-2, Paragraph 2. (emphasis added).

The release language is broad and all-inclusive, and the Release should therefore be interpreted as a general release that intends to cover Mr. Vogel's putative claims against Defendants, as attorneys for Vogel, in his capacity as an individual and stockholder representative. Maryland and Delaware courts have found that general releases may be set aside or reformed only for limited reasons, such as where one of the parties has unfairly procured its execution or where "evidence leaves no serious doubt but that a specific agreement was informally made, but that somehow in articulating that understanding, through the honest mistake of both parties, the formal terms failed in some material respect to conform to the agreement." *Hob Tea Room*, 89 A.2d at 856. The Release was a part of a formal, highly negotiated agreement involving highly sophisticated parties represented by attorneys. Neither Mr. Albert nor his firm served as counsel in the transaction and neither participated in the drafting of the Release. There is no basis to set aside the Release, which is unambiguous.

In a Kansas case addressing circumstances and release language nearly identical to the language at issue here, *Kansas Pub. E'ee Ret. Sys. v. Russell*, 5 P.3d 525 (Kan. 2000), the Supreme Court of Kansas emphasized that the "any and all claims" language of a release should be interpreted as a general release. Moreover, the court stated that the agreement's broad language that released the parties to the contract as well as "any officers, directors, partners, stockholders, employees, principals, agents, counsel, subsidiaries, or controlling persons of the

4

foregoing . . . " included a prior law firm, even though that law firm was no longer representing any party at the time that the release agreement was executed.  The court noted that the agreement made the sale of the company's assets contingent upon executing the mutual release agreement for all potential claims, and that these two contracts were executed together and as part of the same transaction.  Finally, the court rejected the drafting party's argument that the release was ambiguous because "it drafted the release agreement and failed to expressly limit the release to present parties and counsel." *Id.* at 530.  The Kansas case evaluates the same issues present here, and provides further support that Mr. Vogel's putative claims are barred by the Release under either Maryland or Delaware law.

*C. Claims against Mr. Albert as ITI's Attorney*

The Release provides for a "Company [i.e., ITI] Release" and states that the agreement "releases and forever discharges the Company and its Subsidiaries and each of their respective individual, joint or mutual, past, present, and future representatives, officers, directors, employees (both current and former), predecessors, successors, and assigns . . . from any and all claims, demands, proceedings, causes of action, orders, obligations, damages, interest, contracts, agreements, debts liabilities, attorneys' fees, and expenses . . . ." **Exhibit B** at pp. 1-2, Paragraph 2.  The "Company Release" does not include the Company's attorneys.  However, the Release also states: "Further, Releasor [which is defined as a Stockholder, and thus would include Mr. Vogel] waives the right to recover from any complaints, charges, lawsuits, . . . filed by the Releasor or by any federal or state agency on the Releasor's behalf, concerning the Releasees . . . **or any Released Claims**." *Id.*

The "Releasees" are those persons released in paragraph 2 ("Company Release"), which does not include the Company's attorneys; paragraph 3 ("Vogel Release"), which includes, *inter*

5

*alia*, Vogel's attorneys, both in his capacity as an individual and as representative of the stockholders; and paragraph 4 ("Parent Release"), which includes, *inter alia*, Cardinal Health, Eureka, and their attorneys. "Released Claims" includes any claims related to or arising from, *inter alia*, "any amendment, whether effective *or ineffective*, to the Company's Certificate of Incorporation of Bylaws." **Exhibit 2** at pp. 1-2. Given the release language, Mr. Vogel may not recover against Defendants in their capacity as ITI's alleged attorneys, because the Release, which specifically relates to claims arising from "any amendment, whether effective or ineffective, to the Company's Certificate of Incorporation or Bylaws," was intended to bar such a claim. *Id.* at p. 2.

This is supported by the language in paragraph 6 of the Release, which provides:

> **Each Releasor hereby irrevocably covenants to refrain from, directly or indirectly, asserting any claim or demand, commencing, instituting, or causing to be commenced, any proceeding of any kind <u>against any Releasee</u>, <u>based upon any matter</u> purported to be released hereby**. If Releasor files such a claim, Releasor agrees to be liable for damages, attorneys' fees, or costs incurred by any Releasee as a result. If any such action or proceeding is commenced, in whole or in part on the Releasor's behalf, against any of the Releasees by any third person, entity, or agency in any forum, Releasor waives any claim or right in connection with it to any resulting money damages or other personal legal or equitable relief awarded by any court or governmental agency."[6]

**Exhibit B** at p. 3, ¶ 6. Mr. Albert is a Releasee (defined in ¶ 4 of the Release) and the claims against Defendants in this matter include allegations of negligence in providing advice about the split and conversion of Mr. Vogel's shares of ITI stock. Compl. ¶ 29. Advice about the stock

---

[6] Additionally, subsection (iii) of Schedule 8.2(a), titled "Indemnification" to the executed Merger Agreement, lists "any claim or Action by a current or former Stockholder or Performance Unit Holder . . . related to events occurring prior to Closing, including, without limitation, breach of fiduciary duty or ownership or forfeiture of Shares or Performance Units . . . ." *see* Vogel 1198.

6

split and conversion falls directly within those matters that are released pursuant to Paragraph 2 of the Release, including "(f) any amendment, whether effective or ineffective, to the Company's Certificate of Incorporation or Bylaws, (g) the capitalization of the Company…(i) the Preference Payment to Vogel…" **Exhibit B** at p. 2, ¶ 2. Any distinction between Mr. Albert's role as an attorney for Mr. Vogel as an individual and a representative of the stockholders and as an attorney for ITI the Company is without moment because the claims against Defendants, in either capacity, are released.

### D. The "Clarified" (i.e., Revised) Release Agreement Is Legally Flawed.

After the terms of the Release were brought to Mr. Vogel's attention in discussions relating to this dispute,[7] on June 30, 2015, Mr. Vogel and Cardinal Health executed an Amendment to Agreement and Plan of Merger, which Mr. Vogel contends is a "clarification." *See* **Exhibit C** at p. 3, ¶ 3.c. ("(i) nothing in the August 2014 Release or in the Amendment was or is intended to release any claims that Vogel or any other Stockholder Releasor has or had against any attorney or accountant who represented ITI, Vogel, and/or any other Stockholder Releasor prior to Closing…"). As outlined herein, the Amendment is an ineffective and transparent attempt to avoid the clear effect of the Release.

The original Release expressly provides that it may not be "amended" without a writing signed by all those effected. **Exhibit B** at ¶ 10, p. 3 ("This Release may not be changed except in a writing signed by the person(s) against whose interest such change will operate."). Mr. Albert was released, and he is therefore a person against whose interest the attempted

---

[7] Discussions were between current counsel for each party.

amendment would operate. Without Mr. Albert's signature, the attempted amendment is ineffective.[8]

Notwithstanding the deficiency in the Amendment, by releasing the claims against Mr. Albert in the original Release, Mr. Albert was an "intended beneficiary" of the Release. "While a release may consent to the recreation of a cause of action against it, **two parties to a release may not recreate a discharged cause of action against a third party without the third party's consent**." *Auer v. Kawasaki Motors Corp., U.S.A.*, 830 F.2d 535, 539 (4th Cir. 1987) (emphasis added) (applying Maryland law) (citation omitted) In *Auer*, the plaintiff brought a personal injury suit against the driver, owner, and distributor of a truck that collided with Auer's motorcycle. Auer and the owner of the truck reached a settlement agreement, which released all claims against "all corporations who might be liable" to compensate Auer for his injuries. Kawasaki, the distributor, received a copy of the release and filed a Motion for Summary Judgment arguing that it was included in the release. Auer and the owner of the truck subsequently executed an amended release with an explanatory preamble in which they undertook to rescind the earlier release by clarifying their alleged intent. The District Court of Maryland granted summary judgment, holding "that, under Maryland law, the first release discharged Kawaski and the attempted rescission was not an effective revocation of that discharge,"[9] and the Fourth Circuit affirmed that decision, relying in part on the Restatement (Second) of Contracts § 311(3) (1981). *Id.* at 537.

The Fourth Circuit stated that "[u]nequivocally, [the original agreement] released Kawaski. . . . It is of no moment that the unnamed beneficiary of the release gave no

---

[8] At a minimum, the other shareholders (all of whom signed the original Release) should have been required to sign, as opposed to Mr. Vogel signing on behalf of ITI as a whole.

[9] Although the *Auer* case involves joint tortfeasors, the Fourth Circuit's reasoning and holdings regarding the plaintiff's ability to rescind an original release agreement should apply in this case.

consideration for it, was being sued separately, or was confronted with a different theory of liability." *Id.* at 539. Under the original agreement, Kawasaki was an intended beneficiary, and, as such, "[t]he power to modify the benefit accruing to such a beneficiary terminates when the beneficiary 'brings suit on' the promise." *Id.* (citation omitted). *See also Burns v. Gen. Motors Corp.*, 950 F. Supp. 137 (D. Md. 1996) (in *Burns*, this Court held that releases executed by passengers in an automobile discharging a second driver and "any other person, firm, or corporation…" barred a subsequent products liability action against the manufacturer of the vehicle in which they were passengers notwithstanding the execution of "amended" releases specifically stating that the amended releases supercede all prior releases, reserving claims against the manufacturer).

Mr. Albert, like Kawasaki, is an intended beneficiary of the original release agreement. Mr. Albert, like Kawasaki, relied on the original Release in settlement discussions against Mr. Vogel's claims. Were it not for Mr. Albert's good faith efforts to resolve this matter and to execute a Tolling Agreement that extended the deadline by which Mr. Vogel was required to bring an actual lawsuit, Mr. Albert's reliance on the original release agreement would have been in the form of a Motion for Summary Judgment. Accordingly, Mr. Albert should be afforded the same benefits as Kawasaki.

The conclusion that the claims against Defendants are released is true for general releases, such as this one, particularly where they are drafted and executed by sophisticated parties. Where Mr. Vogel and ITI intend to exclude third-party beneficiaries, they do it exquisitely. Where they intend to expand those parties who benefit from the release agreement, such as Mr. Vogel's prior attorneys, including Mr. Albert, the parties do so with equal clarity. Once Mr. Albert relied on that benefit, the right vested and Mr. Vogel and Cardinal Health

cannot take that away without Mr. Albert's agreement. Because Mr. Albert does not agree to rescind the original Release, Cardinal Health and Mr. Vogel cannot amend the prior release of claims against the Defendants.

## **CONCLUSION**

Mr. Vogel cannot assert any claim against Defendants either as counsel for Mr. Vogel or counsel for ITI because these claims were released on August 29, 2014. The attempted Amendment is ineffective, and does not permit Mr. Vogel to avoid the plain effect of the Release.

WHEREFORE, Defendants David Albert, Esquire, and David Albert & Associates, LLC respectfully request that this Court dismiss Mr. Vogel's Complaint with prejudice, or, in the alternative, respectfully request that this Court enter summary judgment in favor of David Albert, Esquire, and David Albert & Associates, LLC and against Plaintiff.


Respectfully submitted,


| | |
|---|---|
| */s/ Alvin I. Frederick* | */s/ Lauren E. Marini* |
| Alvin I. Frederick (01459) | Lauren E. Marini (30057) |
| ECCLESTON & WOLF, P.C. | ECCLESTON & WOLF, P.C. |
| Baltimore-Washington Law Center | Baltimore-Washington Law Center |
| 7240 Parkway Drive – 4th Floor | 7240 Parkway Drive – 4th Floor |
| Hanover, MD 21076-1378 | Hanover, MD 21076-1378 |
| 410 752-7474 | 410 752-7474 |
| 410 752-0611 (fax) | 410 752-0611 (fax) |
| frederick@ewmd.com | marini@ewmd.com |
| *Attorneys for Defendants* | *Attorneys for Defendants* |
| *David Albert, Esquire and* | *David Albert, Esquire and* |
| *David Albert & Associates, LLC* | *David Albert & Associates, LLC* |

# **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 23rd day of November, 2015, copies of Defendants' Memorandum of Law in Support of Their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment were served via first class mail and email on:

Andrew Freeman, Esquire
BROWN GOLDSTEIN LEVY
120 E. Baltimore St., Suite 1700
Baltimore, MD 21202
*Attorneys for Richard E. Vogel and
Innovative Therapies Inc.*

*/s/ Lauren E. Marini*
Lauren E. Marini (30057)