IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD VOGEL     :

          :

 v.        :  Civil Action No. DKC 15-3300

          :

DAVID ALBERT, et al.   :

          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution are (1) the motion to dismiss or alternatively for summary judgment filed by Defendants David Albert and David Albert & Associates ("Defendants") (ECF No. 5), and (2) a renewed joint motion to seal by Plaintiff Richard Vogel ("Plaintiff") and Defendants (ECF No. 11). The motions have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss or alternatively for summary judgment will be DENIED, and the motion to seal will be GRANTED.

**I. Background**

The complaint alleges that Plaintiff was the founder, President, CEO, Secretary, majority shareholder, and sole voting shareholder of Innovative Therapies, Inc. ("ITI"), a Delaware corporation. (ECF No. 1 ¶¶ 1, 5, 9). In 2007, Plaintiff and ITI retained Defendants to provide legal advice related to

changing ITI's corporate structure. (*Id.* ¶ 10). In 2011, Plaintiff again sought to restructure. Acting on Defendants' advice, Plaintiff drafted and ITI's Board approved the issuance of new stock in several different forms without providing notice to ITI's non-voting shareholders. (*Id.* ¶¶ 15-16). Even though those shareholders lacked voting rights under ITI's certificate of incorporation, Delaware law required that they be given the opportunity to vote on an action, like this one, that would increase the aggregate number of authorized shares. (*Id.* ¶ 18). The issuance of stock and the resolution passed by the Board were thus void under Delaware law. (*Id.* ¶ 19). This mistake resulted in the distribution of a greater portion of ITI's equity than planned; excessive distribution of dividends to Plaintiff as a majority shareholder, which he later repaid; a significant loss in profit for shareholders when ITI was sold to Cardinal Health ("Cardinal") in 2014; costs for services to correct the stock split; and additional legal costs for Plaintiff and ITI. (*Id.* ¶¶ 20-26).

As part of the Agreement and Plan of Merger for the sale to Cardinal, Plaintiff signed a release dated August 29, 2014 (the "Release"). (ECF No. 5-3). The Release named as parties Cardinal, ITI, and Plaintiff, "as an individual and as the representative for all of the Stockholders." (*Id.* at 1). The stockholders are the "Releasors" under the Release. The other

three parties and their specified associates are the "Releasees." (*Id.*). Plaintiff both releases certain other parties as a stockholder and is released by the stockholders in his other capacities. (*Id.* ¶¶ 2-3).

The Release contains several definitions. First, the "Company Releasees" are ITI and "its Subsidiaries and each of their respective individual, joint or mutual, past, present, and future representatives, officers, directors, employees (both current and former), predecessors, successors, and assigns." (*Id.* ¶ 2). Second, the "Vogel Releasees" are Plaintiff and "his respective past, present, and future representatives, affiliates, subsidiaries, insurers, attorneys, successors and assigns." (*Id.* ¶ 3). Third, the Releasees are released by the Releasors from the "Released Claims," which include, as relevant here:

> [A]ny and all claims, demands, proceedings, causes of action, orders, obligations, damages, interest, contracts, agreements, debts, liabilities, attorneys' fees, and expenses, whatsoever, whether in law or equity, whether known or unknown, suspected or unsuspected, which such Releasor now has, has ever had or may hereafter have against the respective [] Releasees arising contemporaneously with or prior to the Closing or on account of or arising out of any matter, cause, or event occurring contemporaneously with or prior to the Closing, including, but not limited to, . . . (c) breach of fiduciary duty, . . . (f) any amendment, whether effective or ineffective, to the Company's

> Certificate of Incorporation or Bylaws, (g)
> the capitalization of the Company, (h) the
> Performance Unit Plan (including any
> amendments thereto) and the Performance
> Units issued thereunder . . . . Further,
> Releasor waives the right to recover from
> any complaints, charges, lawsuits,
> administrative proceedings . . ., False
> Claims Act proceedings or qui tam
> proceedings, filed by the Releasor or by any
> federal or state agency on the Releasor's
> behalf, concerning the Releasees (as defined
> below) or any Released Claims.

(*Id.* ¶ 2). The Release also states that it "may not be changed
except in a writing signed by the person(s) against whose
interest such a change will operate." (*Id.* ¶ 10).

   After the Release was raised in pre-suit discussions
relating to this dispute, Plaintiff and Cardinal signed an
Amendment to the Agreement and Plan of Merger ("Amendment") in
June 2015. (ECF No. 5-4). In Paragraph 3.c of the Amendment,
Cardinal and Plaintiff included a "Clarification of Prior
Release" that states:

> [N]othing in the August 2014 Release or in
> this Amendment was or is intended to release
> any claims that Vogel or any other
> Stockholder Releasor has or had against any
> attorney or accountant who represented ITI,
> Vogel, and/or any other Stockholder Releasor
> prior to Closing in connection with the
> authorization or issuance of any shares, any
> amendments or restatements of the articles
> of incorporation of ITI stock splits,
> creation or elimination of any classes or
> categories of shares or shareholders,
> transfers of shares, or any matters relating
> to the capitalization of ITI (the "Advisor
> Claims"), specifically including, but not

4

> limited to, any claims whatsoever against
> [Defendants]; and to the extent necessary to
> give effect to subsection (ii) immediately
> preceding this clause, the August 2014
> Release is amended to explicitly exclude any
> release of [Defendants], and that amendment
> shall be *nunc pro tunc* to the date of the
> August 2014 Release.

(*Id.* ¶ 3.c). Under Paragraph 3.d. of the Amendment, "[a]ny claims that ITI has or had against any of the [Defendants] are irrevocably assigned to Vogel." (*Id.* ¶ 3.d).

Plaintiff filed this suit alleging a single count of negligent legal malpractice on his own behalf and as the assignee of ITI's legal claims. (ECF No. 1 ¶¶ 27-32). Defendants filed the instant motion to dismiss, or in the alternative, for summary judgment, on November 23, 2015, raising the defense that Plaintiff released all claims against them as Vogel Releasees under the Release. (ECF No. 5). Plaintiff responded and Defendants replied. (ECF Nos. 12; 13).

## II. Standard of Review

Defendants' motion is styled as a motion to dismiss, or in the alternative, for summary judgment. A court may, without converting a motion to dismiss into a motion for summary judgment, "consider documents attached to the complaint as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation

omitted). "An affirmative defense, such as release, is not ordinarily considered on a motion to dismiss because the plaintiff is not required to negate it in the complaint." *Alexander v. UIP Prop. Mgmt.*, No. DKC-14-2469, 2015 WL 1472004, at *3 (D.Md. Mar. 30, 2015); *see Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). An affirmative defense can be considered on a motion to dismiss only "if all facts necessary to the affirmative defense 'clearly appear *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). "[A] movant cannot merely show that the elements of the defense appear on the face of the complaint or in properly considered documents, but must also 'show that the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint.'" *Alexander*, 2015 WL 1472004, at *2 (quoting *Goodman*, 494 F.3d at 466). Here, although the parties have stipulated to the authenticity of Defendants' exhibits (ECF No. 5-1, at 2 n.2), the exhibits are integral only to Defendants' defense, not the complaint. Defendants' motion will be construed as a motion for summary judgment.

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 249. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005), but a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences," *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001).

"Defendants bear the burden of proving that the elements of release are satisfied." *Auslander v. Helfand*, 988 F.Supp. 576, 580 (D.Md. 1997) (citing *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1164 (4th Cir. 1982)). "A defendant asserting an affirmative defense in a summary judgment motion must initially prove that no disputed material fact exists regarding the defense," at which point "the burden shifts to the plaintiff to demonstrate specific disputed material facts precluding application of the affirmative defense; if the plaintiff fails

7

to do so, the defendant's motion must be granted." *Id.* (citing *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997)).

## III. Motion for Summary Judgment

### A.   Applicable Law

In diversity actions, the choice of law rules of the state in which the district court sits determine the applicable substantive law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). For contract claims, Maryland applies the doctrine of *lex loci contractus*, applying the law of the state where the contract was formed, unless the contract contains a choice of law provision. *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 572-73 (1995); *Kronovet v. Lipchin*, 288 Md. 30 (1980). Because the sale agreement, the Release, and the Amendment all include choice of law provisions submitting to the "law[s] of the State of Delaware," (ECF Nos. 5-2, at 78; 5-3, at 3; 5-4, at 5), Delaware law governs the contract dispute here.

Under Delaware law, a release is "a form of contract with the consideration typically being the surrender of a claim or cause of action in exchange for the payment of funds or surrender or an offsetting claim." *E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 462 (Del. 1999). In interpreting releases, like all contracts, Delaware courts "give

priority to the parties' intentions as reflected in the four corners of the agreement," construing the agreement as a whole. *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, 55 A.3d 330, 334 (Del. 2012). Releases can be specific, renouncing certain claims known to the parties, or general, "intended to cover everything—what the parties presently have in mind, as well as what they do not have in mind, but what may, nevertheless, arise." *Hob Tea Room v. Miller*, 89 A.2d 851, 856 (Del. 1952).

### B. Analysis

The dispute over the Release in this case is complicated by the multiple roles that both Defendants and Plaintiff took on in this case. Plaintiff alleges that Defendants provided legal representation and breached the duty of care owed both to him and to ITI (ECF Nos. 1 ¶¶ 1, 10-11; 12, at 14), and "brings this action on his own behalf and as the assignee of ITI" (ECF No. 1 ¶ 6). It is unclear from the complaint whether Plaintiff's own claim is brought on the basis of Defendants' representation of ITI, or whether it is based on legal advice provided to him personally. (ECF No. 1 ¶¶ 27-32). Plaintiff now argues that, "[w]hile Mr. Albert and his firm did at times act as Mr. Vogel's attorneys, they are sued here in their capacity as ITI's attorneys. That was the capacity in which they provided negligently erroneous legal advice regarding ITI's stock split." (ECF No. 12, at 14). Under the Release, Plaintiff is a

Releasor, both as an individual stockholder and as the representative for all of the stockholders (ECF No. 5-3 ¶ 1), but he is also a Releasee, both as an officer and director of ITI (*id.* ¶ 2), and as an individual (*id.* ¶ 3).

### 1. ITI's Claims as Assigned by the Amendment

Plaintiff brings a negligence claim as the assignee of ITI. (ECF No. 1 ¶ 6). ITI did not release any claims under the Release. ITI was solely a "Releasee" in the Release, and none of the Release provisions could be construed to divest it of its rights to sue its lawyers. (ECF No. 5-3, at 1). The Release, therefore, did not affect ITI's claim against Defendants for malpractice related to work that they did for ITI, and that claim was received by Cardinal when it purchased ITI. In the Amendment, Cardinal assigned any claims that ITI has or had against Defendants to Plaintiff in his individual capacity.[1] (ECF Nos. 5-4 ¶ 3.d; 1 ¶ 6). Defendants do not challenge the validity of this assignment,[2] and appear to concede in the reply

---

[1] Plaintiff was once again a signatory to this document in his personal capacity and as a representative of the stockholders, but the Amendment distinguished between the two roles by referring to Plaintiff as "Vogel" when he was acting as an individual and as "Representative" when he was acting as a representative of the stockholders. (ECF No. 5-4, at 1).

[2] Although Defendants contest the validity of the Amendment's Clarification of Prior Release provision, the assignment provision at issue here is not subject to the same challenge because it does not change Defendants' position under the Release. (*See* ECF No. 5-3 ¶ 10). Cardinal's assignment

that Plaintiff can bring the claims Cardinal assigned to him on behalf of ITI.  (*Compare* ECF No. 5-1, at 10 (moving for dismissal of entire complaint) *with* ECF No. 13, at 1-2, 6 (asking the court to "dismiss all claims brought by Mr. Vogel in his individual capacity and in his capacity as a representative of the ITI and/or Cardinal shareholders," but not those brought by Plaintiff as the assignee of ITI's claims)).  Defendants' motion for summary judgment on claims Plaintiff brings on behalf of ITI, as assigned to Plaintiff by Cardinal in the Amendment, will be denied.

**2.    Defendants Are Not Released under the Company Release**

As explained above, the Releasors under the Release are ITI's stockholders, including Plaintiff.  The Company Release provides that the Releasors released and discharged ITI, its representatives, officers, directors, and employees, among others, from the Released Claims.  (ECF No. 5-3 ¶ 2).  ITI's attorneys are not included as Company Releasees.  Defendants acknowledge this, noting that the parties to the Release "specifically excluded ITI's attorneys from the Release."  (ECF No. 13, at 4).  Plaintiff's claim, however, is based on an allegation that Defendants *were* ITI's attorneys and were

---

simply transfers its rights to Plaintiff, and Defendants' interests are the same regardless of who holds this claim.

accordingly not released.[3]   Under the plain language of the Release, Plaintiff did not, as a stockholder or in any other capacity, release any claims against Defendants in their capacity as ITI's attorneys.

### 3.   Defendants Are Released under the Vogel Release Solely in their Capacity as Plaintiff's Attorneys

Defendants rely on the Vogel Release in their motion.   The Vogel Releasees specifically include Plaintiff and his "attorneys," unlike the Company Releasees, which do not include ITI's attorneys.   (ECF No. 5-3 ¶¶ 2-3).   Plaintiff argues that Defendants are sued here not as Plaintiff's attorneys, but as ITI's attorneys; that Defendants should be considered unnamed third parties under the release and therefore cannot meet their burden to establish that they were intended to be released; and that the Release was "clarified" by the Amendment, which establishes that the Release was not meant to release claims against Defendants.   (*See* ECF No. 12, at 1-2).

As discussed above, the Released Claims were not released by Plaintiff and the other stockholders against Defendants as ITI's attorneys.   Any work performed by Defendants for Plaintiff as an individual would fall under the Released Claims, however, and Plaintiff and the other stockholders appear to have released

---

[3] Defendants do not admit that they were ITI's attorneys, but at this stage Plaintiff's allegation in the complaint is taken as true.

those claims against Defendants under the plain language of the Release.

Plaintiff argues that Defendants are unnamed third parties seeking the benefit of a release, and as such must show that the release was "crystal clear and unambiguous" to establish that they were intended to be released. (ECF No. 12, at 2). Delaware law does set a high bar "where a third party, not specifically named . . . asserts rights under general language." *Chakov v. Outboard Marine Corp.*, 429 A.2d 984, 985 (Del. 1981). "[I]n order for a release to protect a third party as a matter of law, the language of the release must be crystal clear and unambiguous in its inclusion of that person among the parties released." *Rochen v. Huang*, No. C.A. 87C-JN-96, 1989 WL 5374, at *1 (Del.Super.Ct. Jan. 4, 1989) (citing *Chakov*, 429 A.2d at 985). The *Chakov* and *Rochen* courts, however, were distinguishing between parties specifically enumerated in the release—an individual and "his heirs, executors, administrators, agents and assigns"—and those covered by the phrase "all other persons, firms or corporations liable or who might be claimed to be liable." *Chakov*, 429 A.2d at 985; *Rochen*, 1989 WL 5374, at *1 (interpreting identical language). Although Defendants are not identified by name in the Release, Plaintiff's "attorneys" are specifically referenced in the Release, just as ITI's "officers, directors, employees" and others are referenced.

13

(ECF No. 5-3 ¶¶ 2-3).  As Defendants rightly point out, to require the specific names of all "third party" individuals being released would wreak havoc on the Release, which identifies only one individual—Plaintiff—by name.  Plaintiff's argument would make the Release virtually meaningless; it would, for example, mean that the shareholders did not release any claims against Plaintiff in his capacities as an officer and director, because under the Company Release Plaintiff would be an "unnamed third party."

Assuming as alleged by both Plaintiff and Defendants that Defendants did at some point act as Plaintiff's attorneys (ECF Nos. 1 ¶ 1; 5-1, at 1; 12, at 14; 13, at 2), Defendants are not unnamed third parties under the Release but rather are unambiguously Vogel Releasees.[4]  This case is therefore distinguishable from *Chakov* and the other cases Plaintiff cites, in each of which the non-parties to the release attempted to be released through an "all other" clause.  *See Chakov*, 429 A.2d at 985 (relying on the phrase "all other persons, firms or corporations liable or, who might be claimed to be liable"); *Snead v. Stout*, No. C.A. 04C-10-021-THG, 2005 WL 1653944, at *1

---

[4] Plaintiff attempts to inject ambiguity in the Release by asserting that the phrase "past, present, and future," when read with the modifiers in the Company and Parent Releases, renders the Vogel Release ambiguous.  (ECF No. 12, at 14-15).  Plaintiff has not offered any argument or alternate interpretation of this language, however, which would exclude Defendants as Vogel Releasees even if the phrase does not govern "attorneys."

(Del.Super.Ct. June 16, 2005) (same); *Rochen*, 1989 WL 5374, at *1 (same); *see also Sellon v. Gen. Motors Corp.*, 521 F. Supp. 978, 980 (D. Del. 1981) (relying on the phrase "all other persons, firms, corporations, associations or partnerships").

Plaintiff also argues that the Release is ambiguous as to whether Plaintiff's claim is within the scope of the Released Claims. Plaintiff argues that his claim is based on Defendants' negligence in providing advice on the process for amending ITI's Certificate of Incorporation, and did not therefore "arise from" the ineffective amendment. (ECF No. 12, at 15).

Plaintiff's claim is unambiguously covered by the Release. Delaware courts "have 'long upheld awards of summary judgment in contract disputes where the language at issue is clear and unambiguous,'" without consideration of extrinsic evidence. *Riverbend Cmty.*, 55 A.3d at 334 (quoting *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 783 (Del. 2012)). The Release contains both a general release and specific releases. (*See* ECF No. 5-3 ¶ 2). The Released Claims specifically include those "on account of or arising out of . . . (f) any amendment, whether effective or ineffective, to the Company's Certificate of Incorporation or Bylaws, (g) the capitalization of the Company, [and] (h) the Performance Unit Plan (including any amendments thereto) and the Performance Units issued thereunder." (*Id.*). Plaintiff alleges negligence

15

in Defendants' "handling [of] the split and conversion of Mr. Vogel's shares of ITI stock," which allegedly resulted in an ineffective amendment to the Certificate of Incorporation and incorrect distributions under the Performance Unit Plan. (ECF No. 1 ¶ 29). Plaintiff's alleged damages arise out of errors in ITI's capitalization (*id.* ¶¶ 23-25), the ineffective amendment (*id.* ¶¶ 22, 26), and the distribution of Performance Units (*id.* ¶¶ 20-21). Plaintiff's "claims, demands, . . . causes of action, . . . [and] damages" (ECF No. 5-3 ¶ 2), all plainly are asserted on account of or arise out of the alleged ineffective amendment, ITI's capitalization, and the distribution of Performance Units. There is no ambiguity as to whether the Release covers Defendants' alleged conduct.

For the foregoing reasons, to the extent that Plaintiff raises any claim of negligence for legal representation of himself alone, as a director, officer, or individual, such claim was released by Plaintiff and the other shareholders.

The question then becomes whether the Amendment was effective in reinstating those claims. The Release can be "changed" only through "a writing signed by the person(s) against whose interest such change will operate." (ECF No. 5-3 ¶ 10). The Amendment was signed by Cardinal and Plaintiff, but not by Defendants. It "clarifies" the Release by stating that the Release was not intended to release "any claims that Vogel

or any other Stockholder Releasor has or had against any attorney or accountant who represented ITI, Vogel, and/or any other Stockholder Releasor prior to Closing, . . . specifically including, but not limited to, any claims whatsoever against David Albert, David Albert & Associates, LLC, or any of their respective affiliates, entities, or employees." (ECF No. 5-4 ¶ 3.c). The Amendment directly contradicts the Release, and this provision cannot be a valid change to the Release because it was not signed by Defendants and the other affected persons.

Defendants have proved the elements of release are satisfied, and Plaintiff has not demonstrated disputed material facts that preclude the application of the defense. Plaintiff has released any Released Claim he may have had against Defendants for work that they performed solely as his attorneys. Defendants' inclusion as Vogel Releasees does not, however, release Defendants in all capacities. Defendants point to additional language in the Release that states:

> Releasor waives the right to recover from any complaints, charges, [or] lawsuits . . . filed by the Releasor or by any federal or state agency on the Releasor's behalf, concerning the Releasees (as defined below) or any Released Claims.
> . . . .
> . . . Each Releasor hereby irrevocably covenants to refrain from, directly or indirectly, asserting any claim or demand, commencing, instituting, or causing to be commenced, any proceeding of any kind

17

> against any Releasee, based upon any matter
> purported to be released hereby.

(ECF No. 5-3 ¶¶ 2, 6).  Defendants argue that, if they are Vogel Releasees, then under these provisions, "Mr. Vogel may not recover against Defendants in their capacity as ITI's alleged attorneys."  (ECF No. 5-1, at 6).  Such an interpretation would destroy the careful drafting of the Release's provisions. "Releasee" is a defined term in the Release, referring to the Parent Releasees, Vogel Releasees, and Company Releasees.  (ECF No. 5-3 ¶ 4).  Defendants acknowledge that they are not Company Releasees; that they are Vogel Releasees does not allow them to circumvent this exclusion.  Defendants are Releasees only so far as they were acting as Plaintiff's attorneys, and not to the extent that they were retained in other capacities.

The terms of Defendants' representation of Plaintiff and ITI and the capacity in which they provided the legal advice underlying Plaintiff's claim remain in dispute.  Taking Plaintiff's allegation that his claim is based solely on Defendants' representation of ITI as true, however, Defendants' motion must be denied.  Defendants have not proved that such claims were released either by ITI or by its shareholders.

## IV.  Motion to Seal

Defendants previously moved to seal their motion, memorandum, and exhibits. (ECF No. 6). The motion to seal was denied without prejudice to renewal because it did not provide specific factual representations to justify the sealing or explain why alternatives to sealing would not provide sufficient protection, as required by Local Rule 105.11 and the First Amendment. (ECF No. 8). The parties subsequently filed a renewed joint motion to seal Defendants' Exhibits A, B, and C (ECF Nos. 5-2; 5-3; 5-4). (ECF No. 11).

A motion to seal must comply with Local Rule 105.11, which requires: "(a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." This rule endeavors to protect the common law right to inspect and copy judicial records and documents, *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 (1978), while recognizing that competing interests sometimes outweigh the public's right of access, *In re Knight Publ'g Co.,* 743 F.2d 231, 235 (4th Cir. 1984). The court should consider "less drastic alternatives to sealing," such as filing redacted versions of the documents. *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004). If the court decides that sealing is appropriate, it should also provide reasons, supported by

specific factual findings, for its decision to seal and for rejecting alternatives. *Id.*

In addition, the First Amendment provides a "more rigorous" right of access for certain "judicial records and documents." *Id.* at 575-76. This qualified First Amendment right of access "attaches to materials filed in connection with a summary judgment motion." *Doe v. Pub. Citizen*, 749 F.3d 246, 258, 267 (4th Cir. 2014) (citing *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252-53 (4th Cir. 1988)); *Va. Dep't of State Police*, 386 F.3d at 578. This right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" *Doe*, 749 F.3d at 266 (quoting *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986)); *see also In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (explaining the "significant" distinction between the two rights of access).

The exhibits are part of Cardinal and ITI's Agreement and Plan of Merger. Although the existence of the Agreement is now public, the Agreement contains a confidentiality provision. The parties assert that the exhibits contain the terms and conditions of a confidential agreement and potentially sensitive information regarding the company's structure, finances, and employees. They further allege that alternatives to sealing

would not provide sufficient protection to the confidential
business information contained within, which is "only
tangentially related" to the instant motion. (ECF No. 11, at
2). While the parties request that the exhibits be sealed in
their entirety, they propose that Defendants' motion and
memorandum of law in support, as well as Plaintiff's opposition
and the reply, be filed publicly. The briefing quotes
extensively from the relevant portions of the exhibits,
providing a public record of the basis for the parties'
arguments.

The parties have sufficiently offered reasons supported by
specific factual representations to justify sealing the exhibits
under the Local Rule. Because the parties' public briefing and
this memorandum opinion quote and therefore make available the
portions of the exhibits relevant to this motion, the public's
right of access to judicial records and documents is not
restricted. Accordingly, the parties' motion will be granted
and the exhibits to Defendants' motion (ECF Nos. 5-2; 5-3; 5-4),
will remain under seal.

## V.   Conclusion

For the foregoing reasons, the motion to dismiss or
alternatively for summary judgment filed by Defendants David
Albert and David Albert & Associates will be denied, and the

21

joint motion to seal will be granted.   A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
